36 So.2d 487

### NEWTON v. CITY OF TUSCALOOSA.

6 Div. 733.

Supreme Court of Alabama.

June 30, 1948.

Rehearing Granted July 31, 1948.

212

Gordon Madison, of Tuscaloosa, for appellant.

Wm. Alfred Rose, Ellene Winn, and White, Bradley, Arant & All, all of Birmingham, for appellees.

SIMPSON, Justice (after stating the case).

The appeal is from a decree in a proceeding of declaratory judgment brought in by answer and cross bill to an original bill in equity seeking a permanent injunction against the appellees from (1) collecting or receiving the taxes proposed to be levied by Act No. 424, described in the foregoing statement of the case; (2) issuing and selling the interest-bearing warrants authorized by the act; and (3) pledging any portion of the revenue derived from the accrual of said taxes for the payment of the warrants.

From a decree sustaining the validity of the whole act this appeal has proceeded.

The equity of the original bill is rested on the asserted invalidity of Act No. 424 on various constitutional grounds.

### Section 104, Constitution.

Section 104, subsec. (17), is made the basis of an objection. This section of our Constitution inhibits the passage of a local law authorizing a county, city, or other political subdivision of a county to issue bonds or other securities unless the issuance thereof shall first, before its enactment, have been authorized by a vote of the duly qualified electors of such political subdivision.

This constitutional proviso operates to prevent the legislature from passing a local law authorizing a county or city to issue the character of securities such as are here contemplated without first being authorized by the electorate of that county.

It is cogently argued by skillful counsel that this provision of the Constitution only contemplated bonds or securities which were debts within the meaning of constitutional debt limitation and that the warrants proposed to be issued under § 8 of the act will not be debts of the city or county within the meaning of constitutional debt limitation because they are payable solely out of the special fund to be created by the tax levy. This argument is rested on dictum appearing in the Opinion of the Justices, 230 Ala. 673, 163 So. 105, where it was intimated that securities which do not represent general obligations of the county are not bonds within the contemplation of subsec. (17).

Whatever the intendment of this statement, it was purely obiter, since the act there under consideration was a general act and a consideration of subsec. (17) was not germane to matters there involved.

So regardless of the character of the debt which might be incurred under the provisions of the act or of the intended meaning of the reported statement in that Opinion of the Justices, we are unwilling to ac-

cord the dictum any authoritative effect in the light of the historical background and clear meaning of this provision of our Constitution.

■ The section was new to the Constitution of 1901. A review of the proceedings of that Constitutional Convention, foreshadowing the adoption of subsec. (17), clearly evidences a purpose on the part of the framers of the Constitution to prevent the counties and cities of the state from loading themselves, by local legislation, with bond or security issues and thereby placing undue burdens on the local taxpayers and citizens without their having a voice in the matter. In none of the proceedings of this convention do we find any such strict construction as now sought to be placed on the words "bonds or other securities," nor can we find any warrant for making the distinction pressed on us in the argument. In addressing the convention for the inclusion of such a provision, it was asserted by Governor O'Neal:

"Now I say if you strike out this provision [later adopted as subsec. 17] you leave it in the power of the Legislature to authorize the issuance of bonds, in any town, city or county in the State, absolutely without restriction or limitation. *You allow the local member to come to Montgomery and without consulting his constituents, without seeking to know their wishes in regard to the issuance of bonds, he secures the issuance of bonds in any amount that may suit his pleasure and the people are without remedy."* (Emphasis supplied)—Official Proceedings, Constitutional Convention (Alabama), 1901, p. 1857.

■ The term "bonds or other securities" of course comprehends warrants, too, and the intention is plain that the purpose of this constitutional proscription was to inhibit such local legislation as is intended by the act now under consideration without the matter first being authorized by a majority vote of the duly qualified electors of the county.

One further observation seems necessary. The phraseology of this section is that "the legislature shall not pass a * * * local law * * * *Authorizing* any county, city, town, village, district, or other political subdivision of a county, to issue bonds or other securities" etc. (Emphasis ours.) It is to be noted that the Legislature by the act in question *levied* the taxes, rather than the act *authorizing* such a levy. We can make no distinction here. The insistence is made by the appellees, in order to sustain the validity of the act, that the two statuses are identical and we are in agreement on this point. The difference, to our minds, is the same as between tweedledum and tweedledee.

■ Except in so far as constitutionally proscribed, there is no limit to legislative authority over taxation. The great reserve of power over the subject rests in the State, acting through its legislature, and, out of this plenitude of power, unless restricted by organic law, its authority is absolute. It is "the depository of all authority on the subject," except as so limited.

■■ Counties have no inherent power of taxation. They are agencies or subdivisions of the State, created by law for the more efficient administration of government, and the authority of the county to tax is one derived from the legislature, and may be withheld, withdrawn, or modified (no contractual rights of third persons intervening to compel action). Edwards v. Williamson, 70 Ala. 145; Hare v. Kennerly, 83 Ala. 608, 3 So. 683; State v. Street, 117 Ala. 203, 23 So. 807; Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 388, 85 So. 774; Jefferson County v. City of Birmingham, 248 Ala. 319, 27 So.2d 584, 611; Standard Oil Co. of Kentucky v. Limestone County, 220 Ala. 231, 124 So. 523; State v. Butler, 225 Ala. 191, 142 So. 531; Mills v. Court of Com'rs, 204 Ala. 40, 85 So. 564; State ex rel. Lott v. Brewer, 64 Ala. 287.

In line with this premise, our court has given sanction to legislative action empowering and requiring the levy and appropriation of a city or county tax for a special purpose. Slaughter v. Mobile County, 73 Ala. 134; State v. Street, supra; Keene v. Jefferson County, 135 Ala. 465, 33 So. 435.

In the above case of Slaughter v. Mobile County, it was indicated that, under circumstances, had the governing body of

the county been recalcitrant in obeying the dictates of the act, mandamus might be employed to compel official action for compliance. 73 Ala. 139.

In exposing the fallacy of the contention that an act making a direct levy unlawfully invades the discretion of the county governing body or illegally preempts local authority, the cases point to the principle that the right of taxation is only vested in local authority by State permission and the courts will presume that the act had the sanction of the local taxpayers made known to, and acting through, their duly elected representatives. The court will presume that the act "was with the consent, and at the request of the taxpayers of the constituent body, made known through their representatives." Slaughter v. Mobile County, supra, 73 Ala. at page 137; Keene v. Jefferson County, supra.

It is manifest then that out of this residuum of power, there being no organic prohibition to the contrary, the legislature was as powerful to *make* the local levy as to *require* one to be made; that "having the authority to delegate to that city [or county], as a political and governmental agent, the power to levy, for this purpose, a tax * * * they surely, as sovereign principal, could lawfully exercise the same power * * *." Hare v. Kennerly, supra, 83 Ala. 613, 3 So. 686.

Realizing the beneficent purposes sought to be accomplished by the act, we have been most reluctant in arriving at the foregoing conclusion. Nevertheless, after serious consideration by the whole court sitting en banc, we are fully convinced beyond doubt that the warrant issue proviso of the act is infractive of said provision of the Constitution for the reason stated and are thus left to no alternative except to so declare it.

Such was our holding on original submission. We did not consider that the act might be severable as between the warrant issue provision and the remainder thereof, viz. the tax part. The point was not argued or brought to our attention, so we struck down the entire enactment. It is contended for the first time on rehearing that only that part of the act providing for the issuance of the anticipating interest-bearing warrants should be condemned; that the rest of the act, levying the tax, is complete in itself, entirely severable from the infected portion and therefore valid.

Though, as stated, not mentioned on original submission and not then considered, the point seems to be well taken. We are in accord with the contention, and of consequence our original decree will be so amended.

The rule is well recognized. An act may be valid in part and in part invalid and if the respective portions are independent of each other and entirely severable and the valid competent to stand without the invalid, leaving an enactment sensible and capable of being executed, only the invalid will be stricken and the valid part will survive. State v. Montgomery, 177 Ala. 212, 59 So. 294; State v. Haas, 239 Ala. 16, 194 So. 395; Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 25, 18 So.2d 810; State v. Davis, 130 Ala. 148, 151, 30 So. 344, 89 Am.St.Rep. 23, and cases; 18 Alabama Digest, Statutes, ☞64.

Such also is the rule though the good and bad are contained in the same section, just so they are severable as within the stated rule. Powell v. State, 69 Ala. 10; Lowndes County v. Hunter, 49 Ala. 507.

The principle likewise controls and has been applied as regards local acts, portions of which have been condemned as invalid under § 104, Constitution, supra. Jackson v. Sherrod, 207 Ala. 245, 92 So. 481; State ex rel. Day v. Bowles, 217 Ala. 458, 116 So. 662. See also Ham v. State, 156 Ala. 645, 47 So. 126.

A criterion to ascertain whether or not a statute is severable so that by rejecting the bad the valid may remain intact is: The act "ought not to be held wholly void unless the invalid portion is so important to the general plan and operation of the law in its entirety as reasonably to lead to the conclusion that it would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional." A. Bertolla & Sons v. State, 247 Ala. 269, 271, 24 So.2d 23, 25; Union Bank & Trust Co. v. Blan, 229 Ala. 180, 155 So. 612; 6 R.C.L. 125, § 123.

■ And, where a statute is thus partly infected with invalidity, if under the governing rules the valid part can stand alone as a complete, coherent act, the severable or saving clause thereof (also in the present act) is persuasive to the judicial mind the legislature intended that should the invalid portion be stricken, the valid part should survive. State ex rel. Clarke v. Carter, 174 Ala. 266, 56 So. 974; State v. Montgomery, supra; Opinion of the Justices, 247 Ala. 195, 23 So.2d 505; Williams v. Standard Oil Co. of Louisiana, 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287, 60 A.L.R. 596.

■ According such canonical construction to the questioned act, it becomes necessary to condemn, as we have, only the warrant issue provision thereof as contained in § 8, leaving intact the remainder of the act, i. e., that which levies the taxes.

So considered, it now becomes necessary to respond to the several insistencies challenging this last mentioned phase of the statute.

### Section 45, Constitution.

It is first argued that the act violates § 45 of the Constitution of Alabama in that its subject is not clearly expressed in the title, that the Act has more than one subject, and that it amends, extends, or confers the provisions of other statutes by reference to numbers only of the applicable titles, sections, articles, and chapters of the Alabama Code. These respective contentions will be discussed in order.

■ Sufficiency of Title. The title sufficiently discloses the subject of the act to apprise the legislature and the public of the matter to be dealt with therein and this is all that is required by the Constitution. Marion v. Underwood, 231 Ala. 225, 228, 164 So. 296; Houston County v. Poyner, 236 Ala. 384, 182 So. 455; Ex parte Pollard, 40 Ala. 77.

■ This court has consistently accorded a liberal interpretation to this constitutional mandate and "the subject may be expressed in general terms and when so everything subsumed under the general thought to make it a complete act, if cognate and germane thereto, is regarded as included in and authorized by it. Dearborn v. Johnson, supra [234 Ala. 84, 173 So. 864]; Allman v. City of Mobile, 162 Ala. 226, 50, So. 238.

"But one subject is the requirement, and the form in which it is expressed is left to 'legislative discretion.'" Norton v. Lusk, 248 Ala. 110, 26 So.2d 849(26), 860, and cases cited.

■ We also said in Harris v. State ex rel. Williams, 228 Ala. 100, 103, 151 So. 858, 860: "The general rule is that generality or comprehensiveness of the subject is not a violation of section 45, and that a broad, comprehensive subject justifies the inclusion of any matter not incongruous or unconnected with the subject, provided the title is not uncertain or misleading."

■ "Our cases are uniform to the effect that the title need not be an index to the act; nor need it state a catalogue of all the powers intended to be bestowed." Alldredge v. Dunlap, 240 Ala. 27, 29, 197 So. 36, 37.

Therefore, that the act levies a lien on the property of the taxpayer without it being so stated in the title does not violate § 45. This is adequately indicated in the title by reference to the act as "paralleling, with like provisions" the State sales and use tax and (2) the phrase "and providing for the collection thereof," since the State sales and use taxing acts, respectively, constitute a lien on the taxpayer's property. Title 51, §§ 770 and 804, Code of 1940.

■■ Neither do we perceive a violation of the provisions of § 45 because the body of the act fails to designate the name of the hospital. The title does and conceding, though seemingly unsound, that such was necessary to comply with this constitutional prerequisite, both the preamble and the title of an act may be looked to in order to remove ambiguities and uncertainty in the enacting clause (State ex rel. City of Mobile v. Board of Revenue, 202 Ala. 303, 80 So. 368); the whole act clearly discloses the designation as well as the proposed setup of said hospital.

■ Also unsound is the contention that the subject of the act is not clearly ex-

pressed in the title because, absent from the title, § 4 makes the taxes levied a joint debt due the county and city. Though containing no such specific reference, the title does state that the revenues arising from the levy shall be used for the project by the joint municipalities. It is therefore reasonable to say that the taxes levied for the joint project would constitute a joint debt due the county and city, and that such fact is thereby sufficiently noticed in the title.

The liberal construction rule fully sustains the conclusion that the title of Act No. 424 is sufficiently clear to indicate the matter to be dealt with as not to infract the stated clause of § 45 of the Constitution.

*One Subject.* The argument that the single subject provision of § 45 is violated by embodying in the act the provision for the issue and sale of the warrants and the levying and collection of the taxes is eliminated from consideration, whether tenable or not, since the warrant provision is out of consideration and we deal only with the tax levying part of the act.

*Incorporation by Reference.* It is contended that the act also violates so much of § 45 as provides that "no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be reenacted and published at length."

■ In numerous decisions it has been declared that the effect of this constitutional proviso is that, if the act is original in form, in itself complete and intelligible, a reference therein to an existing law for its formal execution and not varying its terms, does not contravene the mandate of this clause. State ex rel. Terry v. Lanier, 197 Ala. 1, 3, 72 So. 320, and cases cited.

■ Though the complete execution of the act may not be particularized therein and an existing system for the regulation thereof is incorporated in the act by reference, this does not offend the Constitution. The new statute may specify the procedure to be followed by adopting by reference the regulations of an existing statute. Hutto v. Walker County, 185 Ala. 505, 64 So. 313,

Ann.Cas.1916B, 372. "That provision [of the Constitution] has been repeatedly held to apply to statutes strictly amendatory, and not to such as are independent and complete within themselves, although they adopt by reference merely, the provisions of other statutes on the same subject, there appearing in more enlarged and extended form. Such independent legislation does not fall within the mischief designed to be remedied or prohibited by this provision of the constitution." City Council of Montgomery v. Birdsong, 126 Ala. 632, 647, 28 So. 522, 525.

To the same effect are: State Docks Commission et al. v. State ex rel. Jones, 227 Ala. 521, 150 So. 537; Reynolds v. Fabritis, 233 Ala. 625, 172 So. 889; Cobb v. Vary, 120 Ala. 263, 24 So. 442; State ex rel. Bragg v. Rogers, 107 Ala. 444, 19 So. 909, 32 L.R.A. 520; Savage v. Wallace, 165 Ala. 572, 51 So. 605; Hutto v. Walker County, supra; Birmingham Union Railway Co. v. Elyton Land Co., 114 Ala. 70, 21 So. 314.

### Section 217, Constitution.

■ The act is unaffected by § 217 requiring "property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate." This provision relates only to direct property taxes, privilege or excise taxes being without its scope. The only requirement as to the latter is that the tax be equal and uniform. Nachman v. State Tax Comm., 233 Ala. 628, 173 So. 25; Phoenix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am.St.Rep. 143.

### Extraterritorial Levy?

■ It is argued that since the act stipulates that the taxes levied shall be a joint debt due the city and county, that an obligation due the city of Tuscaloosa is thus created and to pay which a levy of a tax is being made for a city outside its corporate boundaries. To support the contention the well-known principle is invoked that the legislature is without authority to authorize an extraterritorial levy of a municipal excise or privilege tax on businesses or occupations carried on without the corporate jurisdiction. White v. City of Decatur, 225 Ala. 646, 144 So. 873, 86

A.L.R. 914; 37 C.J. 181, § 23; 53 C.J.S., Licenses, § 10.

The fallacy of such insistence is that it seems to assume that the proposed levy would only be for the benefit of the city. The levy is county-wide for the benefit of the whole county and the recitation in the act that the taxes therein levied "shall constitute a joint debt due Tuscaloosa County and the City of Tuscaloosa" is merely a collection provision. The levy being county-wide, the principle adverted to above is inapplicable. There are many statutes already enacted authorizing co-operative efforts by counties and cities therein located. One instance is noticed as regards hospitals. See, Code of 1940, Title 22, §§ 189 et seq., 191 et seq.

### Double Taxation.

Though this point is scarcely argued by appellant as to invite a review, we mention that we know of no constitutional prohibition against the levying of a local excise or privilege tax though there be an existing state-wide tax of a similar character. " * * * the propriety of the imposition of taxes against the same subject matter by both a state and its local political subdivisions finds frequent affirmance in the field of excise taxation, it being widely recognized that there is nothing inherently obnoxious in the requirement that license fees or taxes be exacted with respect to the same occupation, calling, or activity by both the state and a political subdivision thereof." 51 Am.Jur. 341, § 288.

### Conclusion.

Keeping in mind the fundamental principle of construction that all presumptions and intendments are indulged in favor of the validity of a statute, it being the recognized duty of the court to sustain an act unless convinced beyond a reasonable doubt of its unconstitutionality, we are led to the result that the part of the act levying the taxes cannot be declared invalid on the grounds posed here for our consideration and it is so adjudged.

It results, therefore, that only that part of the act providing for the issuance and sale of the warrants is condemned as unconstitutional and the decree of the trial court holding to the contrary is reversed and one is here rendered so adjudging. Otherwise the decree below stands affirmed.

Rehearing granted, original opinion and decree modified.

Affirmed in part and in part reversed and rendered.

All the Justices concur.